UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ORLANDO A.,[1]

                           Plaintiff,

                                                                                               Case # 21-CV-339
v.

                                                                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

## INTRODUCTION

Orlando A. ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 8. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the judgment of the Commissioner is AFFIRMED.

## BACKGROUND

On May 22, 2014, Plaintiff protectively applied for DIB and SSI with the Social Security Administration ("SSA"), alleging disability since December 31, 2010. Tr.[2] 11. On July 11, 2017, Plaintiff and a vocational expert ("VE") testified at a hearing before Administrative Law Judge

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4, 5.

1

Paul Georger ("ALJ").  *Id.*  On September 27, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  Tr. 25.  On January 24, 2018, the Appeals Council denied Plaintiff's request for review.  Tr. 1.  On March 26, 2018, Plaintiff appealed that decision to the Western District of New York, and on September 24, 2019, Magistrate Judge Jeremiah J. McCarthy remanded the case to the Commissioner.  Tr. 1423, 1473.  On September 1 and September 15, 2020, Plaintiff appeared with counsel over the phone at a new hearing before the ALJ.  Tr. 1347-93.  On November 3, 2020, the ALJ issued another unfavorable decision, which became the final decision of the SSA.  Tr. 1321-1346.  On March 3, 2021, Plaintiff commenced the present action.[3]  ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990)

---

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to

show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ's 2020 decision analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2010, the alleged onset date. Tr. 1326. At step two, the ALJ found that Plaintiff has the following severe impairments: "anxiety, depression, post-traumatic stress disorder, intellectual disorder, degenerative disc disease of the lumbar spine, hypertensive heart disease, peripheral vascular disease, history of gunshot wound to the left leg and left hip status post open reduction internal fixation surgical repair with instrumentation." Tr. 1327; *see also* 20 CFR 404.1520(c); 20 CFR 416.920(c). At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 1327-28.

Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work with additional limitations. Tr. 1330. Specifically, the ALJ found that Plaintiff "can never climb ramps and stairs, never climb ropes, ladders or scaffolds, never balance, kneel, crouch or crawl, can occasionally balance, can perform simple, routine and repetitive tasks, but not at a production rate pace (e.g., assembly line work), is able to make simple work-related decisions, and can occasionally interact with supervisors, coworkers and the public." *Id.*

At step four, the ALJ found that this RFC prevented Plaintiff from performing his past relevant work. Tr. 1336. At step five, the ALJ relied on the VE's testimony to determine that Plaintiff can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. *Id.* Specifically, the VE testified that Plaintiff could work as a Document Preparer, Addresser, and Stuffer. Tr. 1337. Accordingly, the ALJ concluded that Plaintiff was not "disabled" under the Act, from his alleged onset date, December 31, 2010, through the date of the ALJ's decision, November 3, 2020. Tr. 1337-38.

## II.  Analysis

Plaintiff argues that remand is required because the ALJ's RFC determination was the product of his lay interpretation of medical evidence. ECF No. 6-1 at 10. Plaintiff relatedly contends that the ALJ improperly relied on stale medical opinions because his condition deteriorated after the opinions were issued. *Id.* at 13-15. The Commissioner contends that the ALJ's RFC was not a product of his lay interpretation and, instead, was valid because it was supported by substantial evidence. *See* ECF No. 8-1. Further, the Commissioner argues that the medical opinions were not stale because Plaintiff failed to demonstrate that he suffered any deterioration in his functional limitations. *Id.* at 19-23. For the reasons below, the Court agrees with the Commissioner. Accordingly, the judgment of the SSA is affirmed.

### A.  The ALJ Properly Weighed Available Medical Opinions

The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d. Cir. 2013) (summary order) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971). In doing so, the ALJ's conclusion does not need to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an "ALJ is not qualified to assess a claimant's RFC

5

on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Urban v. Berryhill*, No. 16-CV-76-FPG, 2017 WL 1289587, at *3 (W.D.N.Y. Apr. 7, 2017) (quoting *Wilson v. Colvin*, 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).  Put simply,

> An ALJ is prohibited from "playing doctor" in the sense that "an ALJ may not substitute his own judgment for competent medical opinion." This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion in the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).

In this case, the record contained medical opinions from: (1) consultative examiner Abrar Siddiqui, M.D., in January 2014; (2) consultative examiner Donna Miller, D.O., in August 2014; (3) consultative examiner Krista Luna, Psy.D., in August 2014; and (4) state agency psychological consultant M. Totin, Ph.D., in August 2014.  Tr. 458-62, 508-11, 502-06, 191.  The ALJ explicitly afforded "some weight" to the opinions of Dr. Siddiqui and Dr. Totin, Tr. 1335,, but did not assign specific weight to Dr. Luna's or Dr. Miller's opinions.  However, "[t]he failure to assign a specific weight to an opinion may be harmless error, particularly where the ALJ engages in a detailed discussion of the evidence and the ALJ's conclusion is consistent with the opinion." *Nusreta D.o/b/o D.J. v. Comm'r of Soc. Sec.*, 6:19-CV-06270 EAW, 2021 WL 972504, at *4 (W.D.N.Y. Mar. 16, 2021).  Here, the ALJ engaged in a detailed discussion of and relied on Dr. Luna's opinion, except for the portion in which she stated Plaintiff had "moderate limitation" in performing simple tasks.  Tr. 1335-36.  Further, the ALJ discussed Dr. Miller's opinion in detail and concluded that it was consistent with the evidence in the record.  Tr. 1336.  Still, Plaintiff argues that by affording only partial weight to opinions from 2014, the ALJ crafted an RFC based

on his own lay interpretation of medical evidence.  ECF. No. 6-1 at 10.  For the reasons set forth below, the Court disagrees.

Generally, if an ALJ assigns little or no weight to all available medical opinions, "the ALJ create[s] an evidentiary gap in the record requiring remand." *Garrett v. Comm'r of Soc. Sec.*, 17-CV-1009-FPG, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) (holding that despite ALJ properly assigning all medical opinions little weight, remand required because ALJ may have erred in formulation of plaintiff's RFC).  However, if an ALJ declines to assign significant weight to any available medical opinions, it does not prohibit them from making an RFC finding.  *Schillo v. Kijakazi*, 21 F.4th 64, 78 (2d. Cir. 2022) (holding an RFC determination valid despite the ALJ not assigning controlling weight to any physician's medical opinion).  As discussed, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

In this case, the ALJ did not reject the entirety of any medical opinion and assigned more than "limited" weight to each opinion.  Tr. 1336-26.  It is "within the province of the ALJ" to rely on certain portions of a medical opinion that are supported by substantial evidence and reject portions that are inconsistent or contrary to the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002).  Here, the ALJ relied on the portions of each opinion that were consistent with the record as a whole and adequately explained why he rejected other portions.  In particular, the ALJ rejected the portion of Dr. Luna's opinion that stated Plaintiff had moderate limitations in performing simple tasks  because Plaintiff was independent in his daily life and had a history of unskilled employment.  Tr. 380-82,1335-36; *see Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (ALJ allowed to consider activities of daily living when evaluating medical opinion evidence and claimant's testimony in crafting RFC).  The ALJ noted, however, that the remaining

portions of Dr. Luna's opinion were consistent with the record and proceeded to explicitly discuss such aspects of the opinion in detail before factoring them into his RFC determination. Tr. 1335-36. In addition, Dr. Siddiqui's opinion was given "some weight[,]" but the ALJ rejected the portion of his opinion stating that Plaintiff had mild to moderate limitations for certain physical activities, and assigned more restrictive limitations, because Plaintiff consistently reported pain that increased when performing those activities. Tr. 1336. Based on this record, the Court accordingly concludes that the ALJ properly weighed and discussed the 2014 medical opinions by relying on the portions of such opinions that were supported by substantial evidence, and rejecting portions that were inconsistent or contrary to the record. *See Veino*, 312 F.3d at 588.

Moreover, even if the ALJ erred with respect to Dr. Siddiqui's opinion, Plaintiff fails to demonstrate prejudice warranting remand. "As a general matter, where an ALJ imposes a limitation in his RFC that is *more* restrictive than the relevant medical opinions, there is no error and thus no grounds for remand with respect to that limitation." *Kiyantae N. v. Comm'r of Soc. Sec.*, No. 20-CV-6998, 2022 WL 2758309, at *4 (W.D.N.Y. July 14, 2022). "The fact that a limitation was included despite its absence from any medical opinion means simply that the RFC was more generous than the medical opinions required, and where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Theresa G. v. Saul*, No. 20-CV-362, 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021) (internal quotation marks omitted); *see also Colleen K. v. Comm'r of Soc. Sec.*, No. 19-CV-1124, 2021 WL 117994, at *4 (W.D.N.Y. Jan. 13, 2021); *Jacob M. v. Comm'r of Soc. Sec.*, No. 20-CV-1093-FPG, 2022 WL 61007, at *5 (W.D.N.Y. Jan. 6, 2022). Here, the ALJ determined that Plaintiff retained the physical RFC to perform "sedentary work[,]" a limitation more generous and restrictive than Dr. Siddiqui's opinion that Plaintiff had only mild to moderate physical

8

limitations. Tr. 1330, 1336. The ALJ's assessment of physical limitations more restrictive than Dr. Siddiqui identified is not a basis for remand because "it is within the ALJ's discretion to … credit a claimant's subjective complaints and incorporate limitations based thereon into the RFC finding." *Danielle S. v. Comm'r of Sec. Sec.*, 516 F.Supp. 3d 286, 291 (W.D.N.Y 2021). Accordingly, the Court does not find that remand is warranted based on the ALJ assigning limited weight to the existing medical opinions.

> **B.    The Medical Opinions are not Stale Because Plaintiff Failed to Demonstrate that his Condition Deteriorated**

Plaintiff next argues that the medical opinions in this case are stale and therefore should not have been relied on in the ALJ's determination of Plaintiff's RFC. ECF No. 6-1 at 13. For the reasons below, the Court disagrees.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (quotation marks and citation omitted). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, 16-cv-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). "However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *See Camille v. Colvin* 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order) (finding physician's year-old opinion not stale because subsequent opinions and treatment notes were consistent with physician's opinion). Here, Plaintiff claims he suffered significant medical developments since the 2014 opinions, specifically Stage IV cirrhosis of the liver in 2016 and ocular complications from an assault in 2019. ECF No. 6-1 at 13. "However, subsequent surgeries and new diagnosis do not, alone, render opinions stale." *Christopher C. v. Comm'r of Soc. Sec.*, 20-cv-01774, 2022

9

WL 16797970, at *4 (W.D.N.Y. Nov. 8, 2022). Plaintiff bears the burden of showing "that his physical condition deteriorated after the medical opinions were provided." *Id.* (quoting *Vincent B. v. Comm'r of Soc. Sec.*, 561 F.Supp 3d 362, 367 (W.D.N.Y. 2021)).

### 1. Cirrhosis

The ALJ noted Plaintiff's cirrhosis and stated "there is no evidence this condition impacts the claimants functioning." Tr. 1327. Plaintiff claimed at the 2020 hearing that his Stage IV cirrhosis of the liver caused swelling in the legs, stomach pain, and that he would "elevate his legs above his hips" to reduce the swelling. Tr. 1361. Plaintiff argues that his alleged need to elevate his legs above his hips is a recent functional limitation caused by his deteriorating condition. ECF No. 6-1 at 14. Plaintiff notes that the VE testified that no jobs existed in the national economy that allowed employees to elevate their legs above their hips at will throughout the day. Tr. 1374. Despite this testimony, the evidence in the record after the 2014 medical opinions were issued does not support Plaintiff's claim that he must elevate his legs above his hips at will throughout the day.

Treatment notes from 2017 indicated that Plaintiff had no abnormalities in his abdomen region, that his hepatitis C was not active, and that he did not need treatment for his hepatitis C. Tr. 1076, 1089. Physical exams from May, July, August, September, and October of 2018 indicated that Plaintiff had "[n]o edema of the lower limbs bilaterally." Tr. 1796, 1800, 1806, 1812, 1817, 1825. Additionally, at nearly every examination during that period the Plaintiff did not report leg pain, only reporting leg cramping pain once that he rated mild in severity. Tr. 1795, 1804, 1811, 1815, 1823. Progress notes from November 2019 indicate that Plaintiff still had no edema in his legs. Tr. 1830. Moreover, no medical professional in treatment notes or medical records opined that Plaintiff must or should elevate his legs above his hips at will throughout the day.

Further, Plaintiff testified he was able to sit for "a while[,]" which he further clarified meant at least an hour or longer, stand for 15 minutes, and walk blocks at a time. Tr. 1356-57. "[T]he law is clear that the ALJ may consider … [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp 3d. 427, 436 (W.D.N.Y. 2018) (quoting *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012)). Plaintiff testified he had no issues with activities of daily living such as household chores but added that he struggled to complete (presumably outdoor) tasks when there was snow on the ground. Tr. 1363. Treatment notes from December 2019 indicated that Plaintiff exercised, albeit sporadically, and that he was "working to improve [his] exercise routine." Tr. 2139. Notably, when Plaintiff was asked what "in particular" prevented him from working a 40-hour work week, he did not mention a need to elevate his legs. Tr. 1364. As mentioned, it is Plaintiff's burden to show that his condition deteriorated, but, beyond a brief statement in his testimony, which is contradicted by the record, he has presented no evidence to indicate that his cirrhosis caused a functional limitation that required him to elevate his legs above his hips at will throughout the day. *See Christopher C.*, 2022 WL 16797970, at *4 (describing plaintiff's burden to show deterioration).

2. **Vision Problems**

When determining Plaintiff's RFC, the ALJ noted that Plaintiff had reported eye pain and vision problems in May 2019, but concluded that there was no evidence of any resulting functional limitations. Tr. 1327. While Plaintiff claims "it is clear that [his] condition deteriorated significantly," he again does not reference anything in the record to support this claim. ECF No. 9 at 3. Plaintiff states, in vague and conclusory fashion, that he suffers from "vision problems," a

11

claim which is belied by Plaintiff's admission that "it is difficult to discern what the functional effects of Plaintiff's vision problems could be." ECF No. 6-1 at 14.

Here, the ALJ adequately references treatment notes, medical records, and Plaintiff's testimony in determining that Plaintiff's purported vision problems did not cause new work-related functional limitations. Tr. 1327. In May 2019, Plaintiff visited an eye care facility and complained of vision problems and pain around his eye. Tr. 1793. Treatment notes indicated that Plaintiff had dry eye syndrome and reduced vision; however, Plaintiff was not wearing his glasses at that time. Tr. 1793-95. A few months later, in November and December 2019, treatment notes indicated that Plaintiff had full range of ocular motion, clear conjunctivae, and that his pupils were equal, round, and reactive to light. Tr. 2141, 2147. Notably, Plaintiff denied having any eye related symptoms on both occasions. Tr. 2140, 2146. During his hearing in 2020, Plaintiff alleged pain in his left leg, lower back, an ulcer, but did not allege any pain in his eyes or vision problems. Tr. 1354. While Plaintiff contends that "vision records are notoriously difficult for lay persons to evaluate," "where … the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion [as to a claimed impairment] is not necessarily required." ECF No. 6 at 14; *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d. Cir. 2017) (summary order) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (internal citation omitted). For the reasons explained above, the Court concludes that the record upon which the ALJ relied "contain[ed] sufficient evidence from which [the] ALJ [could] assess the claimant's residual functional capacity" and such evidence rendered a "medical source statement or formal medical opinion" as to Plaintiff's vision unnecessary. *Monroe*, 676 F. App'x at 8. Indeed, the ALJ properly exercised his "discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). In short, because the ALJ relied on the clear evidence in the record, a new medical opinion was not necessary in determining Plaintiff's RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, Plaintiff's Motion for Judgment on the Pleadings is DENIED, and the judgment of the Commissioner is AFFIRMED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 21, 2023
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York